**In re SHAFFER–GORDON ASSOCI-ATES, INC., Debtor.**

**Bankruptcy No. 84–01303K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 9, 1984.

Michael L. Temin, Samuel E. Dennis, Philadelphia, Pa., for debtor.

J. Gregg Miller, Philadelphia, Pa., for Aetna Ins. Co.

Myron A. Bloom, Philadelphia, Pa., for Unsecured Creditors' Committee.

Nancy V. Alquist, Philadelphia, Pa., American Application Associates.

Richard Hoy, Philadelphia, Pa., DeNofa Cons. Co.

Lawrence R. Lesser, West Blue Bell, Pa., for Central Penn Nat. Bank.

James M. Peck, Philadelphia, Pa., for Fidelity Bank.

Charles Basch, Philadelphia, Pa., for Williams & McCrae.

OPINION

WILLIAM A. KING, JR., Bankruptcy Judge.

Pending before the Court is a Motion to Appoint an additional Creditors' Committee pursuant to Bankruptcy Code § 1102(a)(2) which provides:

> On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate protection of creditors or of equity security holders. The court shall appoint any such committee.

11 U.S.C. § 1102.

For the reasons stated herein, we will not appoint an additional Creditors' Committee.[1]

BACKGROUND

Shaffer-Gordon Associates, Inc. ("debtor") filed a voluntary petition under Chapter 11 of the Code on April 24, 1984. A committee of unsecured creditors was appointed on April 29, 1984. The Committee is composed of the holders of the seven (7) largest unsecured claims against the estate according to the debtor's schedules.

On May 15, 1984, American Application Associates, Inc. and Ceilings, Inc., two (2) unsecured creditors who were not appointed to the existing Committee,[2] filed the

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Rules of Bankruptcy Procedure.

2. American Application Associates, Inc. purports to be the holder of the second largest unsecured claim in an amount exceeding $694,-000.00. Because it was listed in the debtor's

instant motion. Objections to the motion were filed by Counsel to the existing Committee and Aetna Insurance Company ("Aetna"), the debtor's bonding agent. On May 30, 1984, Ceilings, Inc. withdrew as a party in interest, having received satisfaction of its claim. Also on May 30, 1984, two (2) additional unsecured creditors, Williams & McCrae and DeNofa Construction Company, joined in the motion to appoint an additional creditors' committee. A hearing was held on June 7, 1984. We held the matter under advisement and asked the parties to submit briefs.

## DISCUSSION

The moving parties characterize themselves as a group of unsecured creditors with interests and rights differing from general unsecured creditors in that they have the right to pursue third parties for satisfaction of their claims. They contend that their interests are antithetical to those of general unsecured creditors who cannot proceed directly against third parties and are limited to collection of their claims from the bankruptcy estate.

The third party rights of movants arise in the following manner. The debtor is in the construction business. In a number of the projects in which the debtor is acting as general contractor, the debtor has been required to post a surety bond guaranteeing payment to subcontractors, materialmen and suppliers for work performed and goods supplied. The subcontractors and suppliers in these bonded projects have the right to proceed directly against the bonding company for payment of their claims.

There are also projects on which the debtor is acting as a construction manager. In these projects, the debtor does not have a direct contractual relationship with the persons supplying labor and materials. Rather, these entities may pursue payment of their claims from the owners of the projects.

Among the seven (7) members of the existing Committee appointed by the Court on April 29, 1984, are two (2) unsecured

creditors with the same third party liability rights as those espoused by movants.[3] The remaining five (5) members of the Committee are in the group of general unsecured creditors. Movants propose to have George Voegle, Inc. and Piasecki Mechanical, the two (2) members with third party rights, become members of the additional Committee. Movants state that: "As a result of the inherently conflicting nature of claims within the general unsecured creditor group, the Existing Committee, as presently constituted, must represent adverse interests. Consequently, the Existing Committee cannot assure adequate representation of the positions of the Third Party Liability Creditors." (Brief of Movants, p. 28)

Although well-resented, many of movants' arguments are speculative in nature. For example, movants contend that certain members of the existing Committee will take the position that funds payable under the bonds are property of the estate. Movants also believe that questions will arise regarding the title to funds passing from the owners of the construction projects to the subcontractors through the debtor. Therefore, movants posit that a principal function of the additional Committee will be "to determine the issues of whether disputed funds are property of the estate and whether Third Party Liability Creditors may have the right to proceed, in an unfettered manner, against third parties, including owners and bonding companies, independently of the bankruptcy action." (Brief of Movants, p. 7)

We have decided not to appoint an additional Creditors' Committee because we find the arguments presented in opposition to such appointment more compelling.

First, Aetna contends that conflicting interests among unsecured creditors do not preclude them from serving together on the same committee if the parties are within the same *class* of creditors. In support of its argument, Aetna recites a statement

---

Schedule at a lesser amount, it was not appointed as a member of the existing Committee.

**3.** One of the two, George Voegle, Inc., serves as co-chairman of the existing Committee.

from the legislative history accompanying section 1102(a)(2):

> The provision will be relied upon in cases in which the debtor proposes to affect several *classes* of debt or equity holders under the plan, and in which they need representation. (*emphasis added*)

H.Rep.No. 595, 95th Cong., 1st Sess. 401 (1977) U.S.Code Cong. & Admin.News 1978, p. 5787, 6357.

Collier interprets the standard for appointment of additional committees as follows:

> On the other hand, in a large case, where there are significant groups of creditors or equity security holders with conflicting claims which are likely to be affected by the plan of reorganization, the court should authorize the appointment of additional committees. *Such committees should be composed of creditors or equity security holders representative of classes as a whole as opposed to dissident factions of particular classes.* For example, in a case in which there are numerous consumer creditors holding claims for deposits *which are entitled to priority* under 507(a)(5), the court may be requested to approve the formation of a committee to represent such claimants. If it is likely that the plan will provide for deferred payments of such priority claims, the court should consider the needs of the group seeking separate representation and recognize their position as a separate unit for the purpose of negotiations concerning the plan of reorganization.

5 *Collier on Bankruptcy* § 1102.02 (15th ed. 1983) (emphasis added).

The Court of Appeals for the Third Circuit specifically addressed the issue of conflicting interests among members of an unsecured creditors' committee in dicta in the case of *In re Altair Airlines, Inc.*, 727 F.2d 88 (3d Cir.1984). Although the issue in *Altair* was whether a collective bargaining agent for employees of the debtor should be given a seat on the existing creditors' committee, and not whether an additional committee should be appointed

as in the case *sub judice*, the reasoning employed by the Court is useful here.

The Court of Appeals held that a collective bargaining representative has a "right to payment" of unpaid wages within the meaning of 11 U.S.C. § 101(4) and is a creditor within the meaning of 11 U.S.C. § 1102(a)(1). Therefore, the representative's application for appointment to the Creditors' Committee should be granted. *Id.* at 91. The relevant language for our purposes, however, is as follows:

> .... Undoubtedly ALPA's members may be interested in a plan of reorganization which preserves both their jobs and their collective bargaining agreement, while other creditors may be interested in liquidation, or a reorganization involving a merger with a non-union airline. Such conflicts of interests are not unusual in reorganizations. Materialman creditors, for example, may sometimes prefer to forego full payment for past sales in hopes of preserving a customer, while lenders may prefer liquidation and prompt payment. Section 1103(c)(2) contemplates that the Creditors' Committee may "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business, and the desirability of the continuance of such business...." (emphasis supplied). There is no reason why the voice of the collective bargaining representative should be the one claimant voice excluded from the performance of that statutory role.

*Id.* at 90.

The existing Committee objects to the appointment of an additional Committee on several grounds. We agree with the existing Committee's argument that the function of a statutory committee is "not to provide a Court sanctioned spokesman, at the cost and expense to the estate, to protect and advocate the interests of creditors in asserted rights against third parties. This can be done, if necessary, by the individual creditors on their own behalf." (Brief of Creditors' Committee, p. 4).

Furthermore, it is likely that movants' claims will be paid by the third parties prior to the completion of a chapter 11 plan of reorganization by the debtor, lending credence to the following statement by the existing Committee:

"The final disposition of this case, and the success of any plan, will therefore depend upon the desires of unsecured creditors without claims against third parties. It is unnecessary and inappropriate to permit Movants to establish an 'interim' Committee which will have no function other than to temporarily preserve and advocate their interests in claims against others, so that their third party claims can be protected and paid, leaving to those remaining ... an existing situation in which Movants are no longer involved ..." (*Id.* p. 5)

In summary, we find at this point in time that the interests of movants are adequately protected by the presence of George Voegle, Inc. and Piasecki Mechanical on the existing Committee and that the function of a Creditors' Committee, as described in Section 1103 of the Code, can be adequately performed by the existing Committee.

If movants' predictions prove to be correct at some future point in the reorganization process of this debtor so that the conflict between general unsecured creditors and unsecured creditors with third party claims becomes counterproductive to an effective resolution of all parties' claims, the Court might be moved to reconsider movants' request upon the filing of an appropriate motion.