### In re SALANT CORPORATION, Thomson Company, Inc., and Obion Company, Inc., Debtors.

#### Bankruptcy Nos. 85 B 10229–85 B 10231.

United States Bankruptcy Court, S.D. New York.

June 25, 1985.

Booth, Marcus & Pierce, New York City, for Amalgamated Clothing & Textile Workers Union.

Fried, Frank, Harris, Shriver & Jacobson, New York City, for debtors-in-possession.

Hahn & Hessen, New York City, for Unsecured Creditors Committee.

### MEMORANDUM DECISION AND ORDER

PRUDENCE B. ABRAM, Bankruptcy Judge.

On February 22, 1985, Salant Corporation ("Salant") and two of its subsidiaries, Thomson Company, Inc. ("Thomson") and Obion Company, Inc. ("Obion") (collective-

---

ly, the "Debtors") filed petitions for reorganization under Chapter 11 of the Bankruptcy Code. The three Chapter 11 cases have been procedurally, but not substantively, consolidated. The cases remain in their early stages, no plan having yet been filed nor is one expected for some time.

The Office of the United States Trustee appointed a single creditors' committee composed of seventeen creditors of the three debtors.[1] Nine of the seventeen are creditors of all three debtors, one is a creditor of Salant and Obion, two are creditors of Salant and Thomson, and the remaining four are creditors of only Salant.

By application dated May 14, 1985, the Amalgamated Clothing & Textile Workers Union, AFL–CIO ("ACTWU") sought to have the court appoint an Official Employees Creditors' Committee consisting of the representatives of non-management employee wage and benefit claims, including health, welfare and pension plans. ACTWU's application states that its oral request to be an *ex officio* member of the Official Committee of Unsecured Creditors was denied by that Committee. ACTWU has proposed a nine-member slate of persons willing to serve who include ACTWU members as well as non-union employees, employee members of the Union of Garment Workers and a representative of the Amalgamated Insurance Fund.

According to ACTWU's application, at the time the Chapter 11 petitions were filed, the three debtors had approximately 5,051 employees, of which Salant employed 2,130, Thomson employed 2,446 and Obion

employed 475. All of the employees who are members of ACTWU are employed by Salant. Apparently none of Thomson's workers are represented by a labor union.

The amount of the pre-petition claims held by employees is uncertain. The Debtors were current with wage payments at the time the petitions were filed. There are, however, accrued but unpaid vacation claims. The Debtors have closed certain facilities in recent months, which may give rise to employee claims. Additional closings may occur. Further, there is a single employer pension plan that is underfunded in a multi-million dollar amount.

ACTWU states in its application that the interests of non-management employees

"Are too diverse from the interests of the general trade and institutional creditors to be adequately represented by such [Unsecured Creditors] Committee." Application at ¶ 15.

ACTWU points to the significant interest the employees have in their continued livelihood. "The human element involved * * * constitutes an interest that has the most impact on the most people in this case."

The Debtors have opposed the appointment of a separate employee committee for several reasons. They say the present committee already represents diverse interests and point to its lone employee representative, who was a member of management. They complain that appointment of such a committee would result in substantial, duplicative and unnecessary administrative expenses.[2] Finally, they question

---

1. The members of the Committee are the following
   Massachusetts Mutual Life Insurance Company,
   The Equitable Life Assurance Society of the United States,
   Manufacturers Hanover Trust Company,
   The Mutual Life Insurance Company of New York
   The Chase Manhattan Bank, N.A.,
   West Point Pepperell,
   Bankers Life Company,
   Swift Textiles, Inc.
   Irving Commercial Bank,
   Burlington Industries, Inc.,
   Quick Service Textiles, Inc.

Milliken & Co.,
Walter E. Heller & Co., Inc.,
Greenwood Mills, Inc.,
George Herman,
Ogilvy & Mather, Partners, Inc.

2. The Debtors also assert that
   "The true thrust and purpose of the ACTWU's request for appointment of the Employees' Committee is undoubtedly an effort to permit counsel to the ACTWU to seek compensation from the Debtor's estates for services rendered to the ACTWU in connection with these cases."

what claims are actually held by employees that will be dealt with under a plan, since the Debtors have already undertaken to obtain court approval for payment of various pre-petition wages and benefits that accrued and intend to honor vacation benefits earned by employees in the ordinary course of business. The Debtors have not brought on any application to reject any collective bargaining agreement.

The Official Creditors' Committee (the "Committee") has also opposed the motion. The Committee points out that approximately $898,000 of the $1,000,000 believed to be due in accrued vacation pay would constitute a priority claim. The Committee states that as of March 31, 1985, the Debtors' actuary estimated the vested unfunded benefits to be approximately $4.7 million and notes that the pension plan is insured by the Pension Benefit Guaranty Corporation. The Committee points out that the Debtors owed as of the Chapter 11 filing date bonuses of $258,000 to nine employees, seven of whom are officers, as well as a total of approximately $3,349,000 in deferred compensation to a total of twelve employees, all of whom are officers or former officers. The present employee representative holds a claim of this type. As the Committee sees the issue, the scope of the employees' claims are limited to claims under the Pension Plan.[3]

At the hearing on its application, counsel for ACTWU made an oral request for the court to expand the existing Creditors' Committee to include non-management employee representatives if the court denied the motion for appointment of a separate committee.

For the reasons which follow, the court denies the motion for the appointment of a separate employees' committee. The court grants the motion to expand the existing Committee. The U.S. Trustee will be directed to appoint three additional members to the Committee to represent non-management employee interests. The three should be chosen so as to adequately represent the interests of ACTWU members, members of the Union of Garment Workers, and non-unionized workers, both as to wage and hour benefits and with respect to vested pension plan benefits.

## DISCUSSION

Bankruptcy Code § 1102(b)(1) states that "A committee of creditors * * * shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kind represented on such committee * * *." The present Committee is about 2½ times as large as the "ordinary" committee contemplated by Code § 1102(b). Moreover, only a single committee has been appointed for the three separate debtors. Compare *In re Proof of the Pudding, Inc.*, 3 B.R. 645 (Bktcy.S.D.N.Y.1980) (court refused to allow creditors' committee for two related debtors to retain the same attorneys and indicated its view that the two committees should be devoid of overlapping membership because "those creditors serving on more than one committee will be called on to represent ofttimes competing interests.").

Code § 151102(b) states that

"On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders."

Code § 1102(c) states that

"On request of a party in interest and after notice and a hearing, the court may change the membership or the size of a

---

Even if this is so, which counsel for ACTWU denies, it is irrelevant to consideration of the merits of the present motion.

**3.** Counsel for the Committee also pointed to the sheer difficulty of accommodation of the Committee in the conference room used for meetings because each member comes with a team.

This problem, although a real one, ought not to influence the present motion. In any event, the obvious solutions would be to get a larger conference room, limit the size of the team that can be brought or seek a reduction in the existing committee size. This later option is plainly unacceptable to existing committee members.

committee * * * if the membership of such committee is not representative of the different kinds of claims or interests to be represented."

■ The Code neither mandates nor precludes multiple creditors' committees in a Chapter 11 reorganization case. In each instance, the court is directed to determine whether an additional committee is required to assure adequate representation of creditors. Creditor is a term defined in the Code and means an entity that has a claim against the debtor that arose at the time of or before the order for relief. See Code § 101(9).

In this case, the direct claims of non-management employees appear to be small in amount. Whether they will increase in the future through rejection of a collective bargaining agreement or otherwise is entirely speculative. The only substantial claims held are those relating to vested pension benefits in an underfunded pension plan. Until at least such time as an employee fails to receive a vested pension payment due, it is unclear to the court whether the employee, as opposed to the pension plan trustees or the Pension Benefit Guaranty Corporation, may bring any action against the Debtors as a result of the underfunded status. Desire for continued employment is understandable. However, only persons holding pre-petition claims are eligible to serve on the Creditors' Committee.

■ Under the circumstances of this case, a separate employees' committee is not warranted.[4] The employees' claims are not large enough to justify a separate committee. Nor is the interest in continued employment one which gives rise to a creditor claim sufficient in itself to justify appointment of an employees' committee.

Although a separate committee is not needed, the court is of the view that the present committee is not representative of the claims of non-management employees as it has no member having a claim of that kind. The only employment related member represents a class of management claimants consisting of a small number of persons holding large claims. The non-management employees are numerous, and each holds a claim, if any, of small size. While some of these claims may be priority claims entitled to payment in full, others will not be. The court finds it unnecessary under all the circumstances of this case to determine at this time either the exact nature or amount of the non-management employee claims as it is apparent that at a minimum a claim exists with respect to the underfunded pension plan.

The views of the non-management employee creditors should be heard in the forum designed to be the focal point for negotiations with a debtor for a plan of reorganization and for consideration of the desirability of the continuation of a debtor's business. Whether a subcommittee for consideration of non-management creditor issues should be established is the Committee's, not the court's, province. It is to be hoped that all members of a creditors' committee recognize their mutual interest in sharing information and opinions, which though they may be divergent, will through constructive discussion help result in achieving the goal of Chapter 11, a successful reorganization.

The court has concluded that three additional members should be appointed. Although this will bring the Committee to the even numbered size of 20, the risk of deadlock on a large committee has less practical significance than on a small committee of the statutorily-contemplated size. The practical significance is less both because deadlock is less likely to occur and because when it occurs it represents a more important expression of lack of agreement among creditors as to the appropriate course of conduct. Were the Committee comprised of the statutory seven, the court would view a single non-management employee representative appropriate. The present three retains that approximate pro-

---

**4.** This district has not traditionally appointed separate employee committees although it has many of the larger Chapter 11 reorganization cases.

portion. There is a subtlety of texture and difference in creditor claims now on the Committee, which no doubt accounts for its seventeen member size. Three representatives will be more reflective of the subtle but no doubt important shades of difference among the holders of the non-management employee claims.

The U.S. Trustee is hereby directed to appoint three additional members to the Creditors' Committee to represent the interests of non-management creditors, taking due account of both unionized and non-unionized employees and of the underfunded pension plan.

It is so ordered.