**In re ORFA CORPORATION OF PHILADELPHIA, Orfa Corp. of America, Orfa Corporation of America (Del.), Debtors.**

Bankruptcy Nos. 90–11253S to 90–11255S.

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 21, 1990.

---

Robert S. Taylor, Lewis, Eckert, Robb & Co., Plymouth Meeting, Pa., trustee.

Warren Pratt, Drinker Biddle & Reath, Philadelphia, Pa., for Bruce Energy Center, Ltd.

Richard L. Berkman, Karen L. Turner, Philadelphia, Pa., for Security Pacific Nat. Bank.

Matthew H. Krekstein, Schwartz & Krekstein, Philadelphia, Pa., for Creditors' Committee.

Frederick D. Lipman, Earl M. Forte, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for Euro American Financial Corp.

Michael L. Temin, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, Pa., for licensees.

Christopher Kuhn, Silberman, Markovitz, Meo & Raslavich, Philadelphia, Pa., for trustee.

Allen B. Dubroff, Gary P. Lightman, Astor, Weiss & Newman, Philadelphia, Pa., for debtor.

Morton R. Branzburg, Klehr, Harrison, Harvey, Branzburg, Ellers & Weir, Philadelphia, Pa., for bondholders.

Geoffrey W. Vieth, Hecker Brown Sherry and Johnson, Philadelphia, Pa., for Provident Mut. Ins. Co.

Daniel E. Farmer, Diamond, Polsky & Bauer, Philadelphia, Pa., for Wm. A.J. Shaeffer's Sons, Inc.

James J. O'Connell, Philadelphia, Pa., Ass't. U.S. Trustee.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Before us in the three above-named related cases is a motion of SECURITY PACIFIC NATIONAL BANK ("SPNB"), easily the Debtor's largest secured creditor and also allegedly an unsecured creditor, requesting this court to direct the United States Trustee ("UST") to appoint a new and separate Creditors' Committee in the case of ORFA CORPORATION OF AMERICA (DEL.) ("ORFADEL"), in addition to the present Committee serving all three debtors. This motion is joined by one large investor-creditor, BRUCE ENERGY CENTRE, LTD. ("BEC"), which has a great interest in ORFADEL's valuable licenses. The Motion is, however, opposed by another large investor-creditor of the Debtor, EURO AMERICAN FINANCIAL CORPORATION ("EAFC"), which is the proponent of the only Plan of Reorganization filed in this case. A confirmation hearing in reference to this Plan is expected to be held within the next thirty days. The motion is also opposed by the single Chapter 11 Trustee appointed in all three cases; the UST; a group of bondholders of ORFA CORP. OF AMERICA ("ORFAM"); and the present Committee.

In light of the apparently-selfish motivations of the supporters of the motion and the broad-based opposition to it; the delay that would result at a crucial juncture of the case if we appointed an additional committee; and the added cost that would be attendant to additional committee, we will deny the motion. We believe that the purported conflicts within the present Committee are not so uncommon or significant as to outweigh the foregoing considerations.

The hotly-contested genesis of these cases is chronicled in an Opinion reported at 115 B.R. 799 (hereinafter cited as "Orfa I"). Therein, we denied a motion to dismiss this case on the ground that it was filed without proper Board authority filed by BEC and EAFC together against the Debtor's incumbent management. The incumbents won that battle, but ultimately lost the war to retain control of the Debtor when they were unable to generate financ-

ing necessary to continue to maintain the Debtors. A single Trustee was ultimately appointed by the UST in all three cases, and he hired the same counsel to represent him in his entire engagement.

The three Debtors can be described as follows: (1) ORFAM—the parent company, whose Board ran all three Debtors and which paid management's salary; (2) OR-FADEL—the holder of two potentially valuable licenses to operate the allegedly ingenious Orfa waste disposal system in the Western Hemisphere; and (3) ORFA CORPORATION OF PHILADELPHIA ("ORFAPHIL")—the owner of a now-non-functioning Orfa plant constructed in southwest Philadelphia. SPNB financed the construction of the plant and hence has a first mortgage on the real estate where it is located and its improvements. BEC was and apparently remains interested in acquiring licensing rights to construct an Orfa plant in Toronto, Canada.

On August 30, 1990, SPNB pressed for a hearing on a motion for relief from the stay which we denied, at least through December 19, 1990, on the condition, *inter alia*, that some party would propose a potentially-confirmable plan by September 28, 1990, and would succeed in shepherding the same throughout the confirmation process. EAFC, which appeared the most likely candidate to do so, did in fact file a Plan on or about September 28, 1990.

This court denied a motion of the Trustee to sell ORFADEL's licenses to BEC for $3.25 million on September 12, 1990, in light of the prospect of EAFC's plan, which featured an integrated disposition of all of the Debtors' assets.

The instant motion was filed on October 11, 1990, just before EAFC's initial Disclosure Statement accompanying its Plan was filed. The Motion, as well as an initial hearing on the Disclosure Statement, took place on November 14, 1990. In the course of that hearing, EAFC was accorded a week to amend its Plan and Disclosure Statement. At the close of the hearing on the instant motion, we directed any interested party to file whatever submission it deemed relevant thereto by November 16, 1990. We set that date because we believe that it was important to resolve this issue on or about the date of a hearing on EAFC's Amended Disclosure Statement on November 21, 1990.

EAFC's plan proposes treating the creditors of all three Debtors alike, paying them all in full over time with the proceeds of financing and/or a private placement agreement to be put together by EAFC, which is an investment firm. This treatment of the Debtors effectively consolidated them, although the only formal motion to consolidate the three cases, filed by the ORFAM bondholders, was withdrawn.

The substantive basis of SPNB's instant motion emphasizes the contrast of the liquidity of ORFADEL, which owns the valuable licenses, to the utter insolvency of the other Debtors. EAFC's Plan sells ORFADEL short, according to SPNB, and, therefore, it argues that ORFADEL needs better representation than that provided by the present Committee, which includes creditors of the other Debtors.

At trial, SPNB presented a great deal of documentary evidence and some rather vague testimony from a newly-assigned loan officer that it had treated the three Debtors as separate companies in advancing credit to ORFAPHIL, which credit advances were allegedly guaranteed by ORFADEL. EAFC called, as its witnesses, Reagan Wilson, a former President and Chief Executive Officer of all three Debtors and ORFAM Board member; and Alexander Cappello, EAFC's President and a long-time Board member of ORFAM. Both convincingly testified that the officers and Board of ORFAM always treated the three Debtors as a single unit and that all third parties dealing with them did so as well.

No evidence was presented as to the actual constituency of the present Committee, either by name or of what Debtor they were creditors. Also, there was no indication as to who the members of the proposed new ORFADEL Committee would be. It was noted that counsel for Philadelphia Electric Co., a large creditor of ORFAPHIL, was the Chairperson of the Committee. SPNB presented a proof of claim of over $8 million in the ORFADEL case, arising from ORFADEL's guarantee of ORFA-

PHIL's secured loan to build the Philadelphia plant.

The lack of distinction among the Debtors pervades our treatment of the issues in *Orfa I.* Throughout those proceedings, neither the Debtor, EAFC, nor BEC made any distinctions among the Debtors. The testimony regarding the consistent commingling of the Debtors' interests and assets is, therefore, undoubtedly true. There is, however, some dispute as to how that fact cuts.

In one of the two strongest authorities cited by SPNB in favor of its motion, *In re Parkway Calabasas, Ltd.*, 89 B.R. 832, 835 n. 3 (Bankr.C.D.Cal.1988), the court ventures away from the issue before it (whether substantive consolidation rendered moot a suit challenging an inter-company transfer as a fraudulent conveyance, which question the court somewhat regretfully answers affirmatively) to set forth, in dictum, the following rule regarding appointment of committees in related cases in the future:

this Court adopts the presumption that it is improper to appoint (1) a single trustee, (2) a single creditors' committee, or (3) the same counsel for the trustees, for the creditors' committees or for the debtors-in-possession under the following circumstances:

(a) Where creditors of the debtors have dealt with such debtors as an economic unit (which may be reflected in guarantees and subordination agreements);

(b) Where the affairs of the respective debtors (as reflected in inter-debtor accounts, jointly owned assets, guarantees, subordination agreements, or shared officers, directors or owners) appear to be substantially entangled;

(c) Where assets have been transferred from one debtor to another in transactions that are not at arms length;

(d) Where piercing of the corporate veil of one of the debtors is necessary or advisable to protect the rights of creditors of another debtor.

The other of SPNB's strongest authorities is *In re White Motor Credit Corp.*, 18 B.R. 720 (Bankr.N.D.Ohio 1980). There, in sustaining creditors' unanimous request for separate committees in each of six related cases over the protests of the debtors, the court held, *id.* at 722, as follows:

As a matter of law, section 1102 indicates that each case should have a Court-appointed committee. While such language does not preclude the Court from appointing identical committees in related cases, it cannot be said to authorize a single committee under the circumstances of these proceedings. Section 1102 indicates that each case must have a committee of unsecured creditors appointed by the Court.

Despite the breadth of the pronouncements by the *Calabasas* and *White Motor* courts, we believe that these passages are reflective of the particular facts before the respective courts. In *Calabasas*, the court was frustrated by the lack of opposition to the Debtors' substantive consolidation, which operated to the detriment of one of the Debtors. In *White Motor*, the court was faced with debtors who assumed a stance contrary to the unanimous position of their creditors. However, we believe that, in most circumstances, these pronouncements must be tempered by consideration of the identities and interests of the parties voicing the various positions on the issues, and by the need to prevent possibly crucial delay and heightened administrative expenses in the Chapter 11 process.

For example, Judge Buschman, in *In re Beker Industries Corp.*, 55 B.R. 945, 948–51 (Bankr.S.D.N.Y.1985), holds that, due to the complexity of the two related cases before him, the appointment of a separate equity security holders committee is appropriate. However, neither Judge Buschman, nor, apparently, any other interested party in those cases expressed concern that but one creditors' committee had been appointed for the two debtors. *Id.* at 947.

In a later decision, *In re McLean Industries, Inc.*, 70 B.R. 852, 861–62 (Bankr.S.D.N.Y.1987), Judge Buschman expressly criticizes the broad holding in *White Motor* that separate committees are required in every case. Faced with the cases of four related debtors in *McLean*, he refused to

appoint more than one committee despite being faced with a conglomeration of creditors holding secured claims and unsecured claims against the various debtors.

Similarly, Judge Abram, in *In re Salant Corp.*, 53 B.R. 158, 161 (Bankr.S.D.N.Y. 1985), vigorously asserts that a separate "employees committee" was not required in that case, never stopping to question that a single committee composed of creditors bearing different configurations of debt from the three related debtors was inappropriate. *Id.* at 158–59.

In *In re Texaco, Inc.*, 79 B.R. 560, 562 (Bankr.S.D.N.Y.1987), Judge Schwartzberg was presented with a famous case of three large related debtors. However, there, the court merged a separate "industry committee" into a single general unsecured creditors' committee for all three cases without considering whether three committees were required in light of the fact that there were three cases. *Id.* at 566–67.

It is of course difficult to measure the potential conflicts among the related creditors of any of the particular debtors in the above cases, because that issue was not discussed and apparently was not raised in any of those cases. However, this court, which heard *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 655 (Bankr.E. D.Pa.1987), was quite aware that, in that case, the same sort of contentions of existence of conflicts which militated against a single committee trotted out by SPNB and BEC here could have been levelled. The related debtors in the *Grant Broadcasting* group of cases were five separate corporations, including a parent holding company with few individual assets and four subsidiaries which varied greatly in financial strength and solvency. However, this court quickly rejected the suggestion that two committees were necessary despite the fact that the size, capacity for hiring independent counsel, and interests of the credi-

tors of each debtor were very different. *Id.* at 661.[1]

As SPNB observes, it is true that no party in *Grant Broadcasting* urged, as it and BEC do here, that the absence of separate committees resulted in inherent conflicts. However, that observation may merely be testimony to the imaginative nature of the claims of SPNB and BEC. It is ultimately a significant weakness of SPNB's position that it may not be joined by any of the creditors of ORFADEL on whose behalf it purports to be speaking. There is no evidence that BEC, its only ally, is in this class. In fact, it seems clear that the only common factor and hence the likely primary motivating factor of the unity of SPNB and BEC in pressing the instant motion is à common interest in delaying and, possibly, destroying the only plan of reorganization which has been filed in any of these cases.

It is vital that EAFC's plan be readied for confirmation on or about December 19, 1990, or SPNB undoubtedly will press its § 362(d) motion once again.[2] It would undoubtedly take some time for the UST to select a new committee and for its chosen counsel to be brought up to the present fast speed of these cases. Moreover, if a conflict is found to exist on the part of counsel for the Committee by representing two groups with opposite interests, it might be necessary to eliminate the committee's present counsel as counsel for *either* the remaining Committee of ORFAM and ORFAPHIL *or* the new Committee for ORFADEL.

The fact that SPNB's motion comes so late in the process, especially considering that party's uniquely-clear awareness of the issue of the distribution of assets among the three debtors from the early stages of this case, is an important factor. At this stage in these cases, it appears "too late for a committee to exercise its most

---

**1.** The programmers were huge creditors of the subsidiaries. The other trade creditors were small creditors of the parent. A consolidated plan, as was ultimately confirmed, could obviously adversely affect the rights that these creditors would have had if the debtors had been administered separately. However, if all of the creditors of each debtor vote for a consolidated plan, as occurred in the *Grant Broadcasting*

cases, it is difficult to see what unfair prejudice could result to any creditor from the absence of separate committees.

**2.** In fact, on November 8, 1990, SPNB filed a "renewed" motion for relief from the automatic stay, which is now listed for a hearing on November 28, 1990.

important function—negotiating a reorganization plan—as a reorganization plan has already been submitted to the bankruptcy court." *In re Johns–Manville Corp.,* 68 B.R. 155, 163 (S.D.N.Y.1986), *appeal dismissed,* 824 F.2d 176 (2d Cir.1987). *Accord In re Public Service Co. of N.H.,* 89 B.R. 1014, 1020 (Bankr.D.N.H.1988); and *In re Sharon Steel Corp.,* 100 B.R. 767, 779 (Bankr.W.D.Pa.1989).

Another important issue is avoidance of the additional and unnecessary administrative costs that would result if another committee and a potential enclave of additional professionals is appointed. *See Sharon Steel, supra,* 100 B.R. at 779; *Grant Broadcasting, supra,* 71 B.R. at 661; and *In re Shaffer–Gordon Associates,* 40 B.R. 956, 958–59 (Bankr.E.D.Pa.1984).[3]

Finally, we must note the tenor of the opposition to the motion. Perhaps it could be argued that the opposition to the motion by EAFC, the Committee, and the bondholders is voiced by parties as interested in the success of the plan and/or their potential for personal gain from consolidation as are SPNB and BEC in the frustration of EAFC's plan and all that goes with it. However, it is difficult to discount the position of the Trustee or the UST as easily. The Trustee would appear to have no reason to favor the creditors of one debtor over the creditors of the others.[4]

It is even more difficult to articulate any reason for bias on the part of the UST, which, at the hearing on November 14, 1990, expressed vigorous verbal objection to the instant motion. While the UST's position is not controlling on the issue of whether additional committees should be appointed, *see* 11 U.S.C. § 1102(a)(2); and *Sharon Steel, supra,* 100 B.R. at 772–76

(court decision that an additional committee (of debenture holders) is unnecessary cannot be undermined by the UST), the views of the UST, as the party empowered to make all of the appointments of specific committee members, is entitled to at least some degree of deference. Despite its role as watchdog of conflict situations, the UST was obviously not troubled by the conflict-potential scared up here by SPNB and BEC.

For all of the reasons set forth herein, SPNB's motion will be denied.

---

**3.** In *Grant Broadcasting,* we referenced the concern of Judge King and this court concerning the burgeoning costs of administration of Chapter 11 cases which arose from compensation of committee members in *In re J.E. Jennings, Inc.,* 67 B.R. 106 (Bankr.E.D.Pa.1986), *rev'd,* 96 B.R. 500 (E.D.Pa.1989), *on remand,* 100 B.R. 749 (Bankr.E.D.Pa.1989); and *In re Windsor Communications Group, Inc.,* 54 B.R. 504 (Bankr.E.D.Pa.1985). The first Court of Appeals decision on this issue vindicates our concern. *In re George Worthington Co.,* 913 F.2d 316, 20 BCD 1732 (6th Cir.1990).

**4.** Of course, according to the *Parkway Calabasas* court, *see* page 297 *supra,* it would be necessary for us to appoint new and separate trustees and new and separate counsel in at least two and possibly all three of the cases. Since SPNB does not request appointment of any new trustee or trustee's counsel, we have some question as to whether SPNB, like us, is really able to swallow the whole dictum in *Parkway Calabasas* as a general rule applicable in *all* instances where cases which potentially could be consolidated are filed.