**In re HILLS STORES CO., et al., Debtor.**

**Bankruptcy No. 91 B 10488(TLB).**

United States Bankruptcy Court, S.D. New York.

Feb. 13, 1992.

Kaye, Scholer, Fierman, Hays & Handler by Andrew Kress, Craig Reiders, Allison Klayman, New York City, for debtors.

Otterbourg, Steindler, Houston & Rosen by Glenn Rice, Scott Hazan, Richard Rubenstein, New York City, for official committee of unsecured creditors.

Anderson, Kill, Olick & Oshinsky by Roy Babitt, Mark F. C. Berner, New York City, for bondholders.

Kenneth S. Grossman, New York City, for certain bank creditors.

Feltman, Karesh, Major & Farbman by Edward M. Shapiro, New York City, for Westinghouse Credit Corp.

Harold Jones, U.S. Trustee by Keith Costa.

CORRECTED TEXT OF BENCH RULING DELIVERED ON JANUARY 17, 1992 ON MOTION FOR THE APPOINTMENT OF A SUBORDINATED BONDHOLDERS' SUBCOMMITTEE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OR A COMMITTEE OF SUBORDINATED BONDHOLDERS

TINA L. BROZMAN, Bankruptcy Judge.

Almost a year ago, the United States Trustee appointed a single committee of unsecured creditors (the Committee) in this Chapter 11 reorganization for a very large retailer. No challenge to the U.S. Trustee's action has been voiced, let alone mounted, until now. Four subordinated bondholders ask for the appointment of either an official subordinated bondholders' subcommittee of the Committee or, in the alternative, for their own committee.

The motion was submitted for my consideration on affidavits. Most of the salient facts were undisputed and, through stipulations placed on the record today, those factual disputes which did exist have now been resolved. All parties have waived the right to present live testimony.

## I.

This case was commenced on February 4, 1991 when Hills Stores Co. and the other related debtors (collectively, Hills or the Debtor) filed voluntary chapter 11 petitions. All were continued in the management of their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code, 11 U.S.C. §§ 1107 and 1108. At the time of its bankruptcy, Hills operated 154 department stores in twelve states. Sales at the end of its last fiscal year, ending February 3, 1991, were $2.1 billion.

Eleven days after Hills sought refuge in chapter 11, the U.S. Trustee appointed a 15 member committee pursuant to Section 1102(a) of the Code. Its membership consisted of three banks, two holders of senior notes, five trade creditors, one factor and four representatives of the four separate tranches of subordinated debt, each tranche with different priorities from the other.

Given that the Committee is large, to aid in its smooth operation its constituencies formed three subcommittees all of which have subordinated bondholder representation. The Orders Subcommittee makes decisions on matters between $50,000 and $2 million that are not deemed policy issues and recommendations on matter in excess of $2 million or on questions of policy. Throughout the course of this case the decision and/or recommendation of the Orders Subcommittee almost always has been unanimously approved by the full Committee. The Plan Subcommittee was formed to discuss preliminary plan of reorganization proposals with the Debtor and report back to the full Committee. The Finance Subcommittee was formed to work closely with the accountants and investment advisors.

The Subordinated Bondholders urge today that similarly situated creditors are not adequately represented by the Committee. This is so they say because:

(i) they have economic interests that diverge dramatically from the senior and trade creditors who dominate the committee;

(ii) the Committee has failed to investigate possible preference claims and lender liability actions against senior creditors on the Committee;

(iii) the various subordinated bondholders are numerically underrepresented in relation to the size of their aggregate unsecured claim vis-a-vis other types of creditors;

(iv) the structure of a plan of reorganization will likely follow that in other retail cases, a structure which they find unpalatable;

(v) the Committee has not acceded to their several requests to ask the U.S. Trustee to change the composition of the Committee; and

(vi) the Committee was underhanded in its selection almost a year ago of professionals.

The Debtor and the Committee oppose the motion, contending that the subordinated bondholders' arguments are factually unfounded and based on speculation; the conflicts advanced are not unusual; the timing of the motion so late into the case will jeopardize the anticipated emergence of the Debtor from bankruptcy this spring or summer at unnecessary additional cost; and, finally, the Court lacks jurisdiction to direct the existing Committee to form a subcommittee.

## II.

Section 1102(a)(2) of the Bankruptcy Code provides that "[o]n request of a party in interest, the court may order the appointment of additional committees of creditors or equity holders if necessary to assure adequate representation of creditors or of equity security holders." Thus, the Committee must provide adequate representation for unsecured creditors, including the subordinated bondholders. As the statute affords no "bright-line" test for adequate representation, the court is armed with the discretion after examining the facts to determine if additional committees are warranted. *In re Beker Industries Corp.*, 55 B.R. 945, 948 (Bankr.S.D.N.Y. 1985). Considerations such as the ability

of the committee to function, the nature of the case and the standing and desires of the various constituencies assume significance. *In re McLean Industries, Inc.,* 70 B.R. 852, 860 (Bankr.S.D.N.Y.1987). While bankruptcy courts have generally been reluctant to appoint separate committees of unsecured creditors notwithstanding the diverse and sometimes conflicting interests of creditors, *In re Public Service Co. of New Hampshire,* 89 B.R. 1014, 1020 (Bankr.D.N.H.1988), a case which is sufficiently large and complex may strongly indicate the need for additional committees representing different interests. *Beker, supra* at 949. The potential added cost is not sufficient in itself to deprive the creditors of the formation of an additional committee if one is otherwise appropriate. *McLean, supra,* at 860.

■ Turning to the different economic interests argument, the subordinated bondholders posit that they will potentially support a business plan and plan of reorganization that will maximize the company's long term equity value while the senior and trade creditors are likely to press for an early payout at the expense of the company's operations and enterprise value. The subordinated bondholders claim that as a result of a wave of major retail bankruptcies, a consistent pattern (which, ironically, they have described in two different fashions) has emerged in which the senior debt is reinstated with an adjusted maturity, principal balance and interest rate; the trade debt is paid with cash and possibly new equity; and the bulk of the new equity and new subordinated debt is given to the subordinated bondholders. The subordinated bondholders then baldly advance that this preordains the future if their motion is not granted. Not only is this rank speculation but it is at odds with the facts. Hills has proposed terms for a plan which are materially different from what the subordinated bondholders project.

Contrary to the bondholders' assertion, the presence of potential conflict may not always require separate committees in order for representation to be adequate. *In re Sharon Steel Corp.,* 100 B.R. 767, 777 (W.D.Pa.1989); *McLean, supra* at 861. Indeed, creditors' committees often contain creditors having a variety of viewpoints. Conflicts are not unusual in reorganization and in most cases can be expected among creditors who are acting to protect their separate business interests. *Id.* What the subordinated bondholders have painted is a picture reflecting no darker image than the ordinary fears, concerns, and conflicts that are inherent in the reorganization process. Were this a case where the creditors of separate debtors had vastly conflicting aims and entitlement and had shown themselves unable to function on a single committee, I might be more inclined to the subordinated bondholders' view, but here there is only one operating debtor engaged in a single business. Albeit that Hills has a complicated capital structure, these cases are not nearly so complex as those multi-debtor, multi-business cases where more than one committee may be appointed.

The contention that the Committee has failed to investigate possible preference claims and lender liability actions against senior creditors on the Committee borders on bad faith, for the Debtor is undertaking a preference analysis, as is its obligation, and until this motion was made the subordinated bondholders never gave voice to their theory that there may be a lender liability claim available to the creditors. Moreover, Hills has agreed to investigate this theory as well and that function is more properly its than any committee's, in the first instance at least. The bondholders are correct in asserting that a committee's failure to investigate lender liability claims could under certain circumstances constitute a breach of fiduciary duty if proven. However, it certainly hasn't been proven here and a far better remedy for such an alleged dereliction would be the appointment of an independent examiner. This Committee has functioned admirably well in passing upon the various motions and requests made by the Debtor. To monkey with the Committee because one group of creditors has just raised the specter of possible lender liability makes little sense.

I turn now to the subordinated bondholders' claim that they are numerically under-

represented in relation to the size of their unsecured claim. Nowhere does the Code mandate a committee must faithfully reproduce the exact complexion of the creditor body. What is required is adequate representation of various creditor types. The disparity between the bondholders' claims, which constitute 35% of the debtor's total liabilities, and their Committee representation, which is approximately 27%, does not establish such inadequate representation as to warrant the formation of a separate committee. Under any scenario the bondholders will never comprise a majority of a single committee representing all unsecured creditors. More importantly, the bondholders have put forth no tangible evidence whatsoever which would tend to substantiate their claim that, as a result of their alleged underrepresentation the Committee will be unable to negotiate successfully with the Debtor. Despite the fact that the bondholders do not have a majority voice on the Committee, there is not one group which by itself can control the decisions of the Committee without the aid of another. Moreover, the subordinated bondholders have neglected to mention a most salient fact in their papers—that they have one-third of the seats on all three of the Committee's subcommittees, and to a large extent it is those subcommittees which exercise the initial decision-making authority of the Committee. To make an argument respecting numerical representation without mentioning the subcommittee membership evidences a surprising lack of candor to the Court.

This motion confuses adequate representation on a Committee with the right to charge a debtor's estate for separate professionals. What the Code requires is that conflicting groups of creditors have a voice through adequate representation on a Committee. That voice exists here. The subordinated bondholders' argument that they are effectively rendered impotent to protect their interests without a majority voice in the Committee ignores the role of the Committee as a catalyst for negotiation and compromise between the parties in the reorganization process. The fact that the Bondholders may not be able to protect all

their interests and achieve *all* their goals is not paramount, as the ultimate aim is to strike a proper balance between the parties such that an effective and viable reorganization of the debtor may be accomplished. As in most Chapter 11 cases, there will be common interests among various groups of unsecured creditors. The inclusion of such groups within one committee may facilitate the consensual resolution of the conflicting priorities among the holders of unsecured claims and thereby facilitate the negotiation of a consensual plan. 5 L. King, *Collier on Bankruptcy,* ¶ 1102.02, 1102–26 (15th ed. 1991). The bondholders have not demonstrated that there exists conflict among the unsecured creditors which is so profound as to impede the Committee's ability to function. Their claim of a pattern of discrimination by the senior and trade creditors against them is devoid of factual support.

The argument respecting the appointment of the Committee's professionals is also wholly frivolous. Nothing in this record suggests that one of the four subordinated bondholders was deliberately excluded from the meeting of the Committee at which counsel was selected nor does anything bear out the claim that the Committee intended to select an investment banker who gave the lowest initial estimate of the value of the Debtor's assets. Indeed, whereas the investment advisor selected may have valued the assets originally somewhat lower than other candidates, it has revised its estimate substantially upward, putting to rest any suggestion of improper or base motive.

It is late in the day for the subordinated bondholders' motion. The proceedings have advanced to a point where the detailed business plan has been critiqued and plan negotiations are about to commence. The Debtor has represented that the plan in these cases can be confirmed during the spring or summer of this year. The subordinated bondholders could have moved for the requested relief six or more months ago when the complained of action or inaction of the Committee was alleged to have occurred, instead of at a time when the

appointment of an additional committee or subcommittee would no doubt delay the confirmation process, result in additional expense for the estate and possibly cause the proliferation of other committees. *In re Orfa Corporation of Philadelphia*, 121 B.R. 294 (E.D.Pa.1990). Nevertheless, if I believed the delay and expense were justified by facts instead of speculation, I would not hesitate to order the appointment of an additional committee to assure adequate representation.

What the subordinated bondholders seek is the appointment of a new committee which may retain professionals or the appointment of a subcommittee which may retain professionals. As the composition, function and rights of each as proposed are the same, aside from the jurisdictional issue raised by the Committee, this is a distinction without a difference. While I may order the appointment of additional *committees* under § 1102(a)(2) of the Code, the statute no longer permits the addition or deletion of *members* of committees by the court except in circumstances not relevant here. *In re Drexel Burnham Lambert Group Inc.*, 118 B.R. 209, 210–11 (Bankr. S.D.N.Y.1990) citing *In re First Republic Bank Corp.*, 95 B.R. 58, 60 (Bankr. N.D.Tex.1988). Section 1102(c) was amended in 1986 as part of a nearly nationwide expansion of the U.S. Trustee program, not only to revise § 1102(a) by vesting the appointment power in U.S. Trustees, but also to delete former § 1102(c) which expressly enabled the court to add and subtract creditors from creditors committees. *Id.* at 210. For this reason, and because the reasons advanced for the appointment of a subcommittee, which are identical to those for appointment of a separate Committee, are without merit, I will not add a subcommittee to the committee.

Finally, as the Debtor points out, if the subordinated bondholders believe that the cases would be advanced by their taking a more active role, they are not precluded from forming an unofficial committee, retaining counsel and a financial advisor and seeking reimbursement of their expenses

to the extent that they make a substantial contribution to the case, as permitted and even envisioned by § 503(b) of the Code. In fact, it emerged in oral argument this morning that the subordinated bondholders have had counsel for one year. This is not then a dispute about adequate representation, but about adequate assurance of alternative compensation.

The motion by the subordinated bondholders for the appointment of a subordinated bondholders' sub-committee of the Official Committee of Unsecured Creditors or, in the alternative, an official committee of subordinated bondholders is denied.*

---

* An order was previously entered following oral

delivery of this decision on January 17, 1992.