### In re VICTORY MARKETS, INC., Debtor.

### No. 95–CV–1619.

United States District Court, N.D. New York.

April 11, 1996.

Menter, Rudin & Trivelpiece, P.C. (Jeffrey Dove, of counsel), Syracuse, New York, for debtor.

Hancock & Estabrook, LLP (Stephen Donato, of counsel), Syracuse, New York, for Mellon Bank as Trustee for First Plaza Group Trust.

Kirkland & Ellis (David L. Eaton, of counsel), Chicago, Illinois, for Mellon Bank as Trustee for First Plaza Group Trust.

Office of U.S. Trustee (Kim Lefebvre, Michael Collins, of counsel), Utica, New York, Harter, Secrest & Emery (John R. Weider, of counsel), Rochester, New York, Co–Counsel for Unsecured Creditors Committee.

Coughlin & Gerhart (Henry J. Rode, II, of counsel), Binghamton, New York, for Crowley Foods.

### *Memorandum–Decision and Order*

McAVOY, Chief Judge.

**Mellon Bank,** Appellant and Trustee for First Plaza Group Trust ("First Plaza"), filed a motion in Bankruptcy Court for an Order pursuant to 11 U.S.C. § 105(a) directing Appellee, the **Office of the United States Trustee** (the "UST"), to appoint First Plaza as a member of the Official Committee of Unsecured Creditors in the captioned case. After a hearing on the motion, Judge Gerling issued a Memorandum–Decision and Order denying Appellant's motion on the ground that the Bankruptcy Court lacked the authority to add creditors to a committee appointed by the UST. Appellant filed this appeal.

## I. Background

### A. Facts

On September 20, 1995, Victory Markets Inc. ("Victory Markets") and five of its wholly-owned subsidiaries (collectively, "Debtor") filed for relief under Chapter 11 of the Bankruptcy Code. Since the commencement of the case, Debtor has continued to operate its business as debtor-in-possession pursuant to Code §§ 1107 and 1108. Debtor operates approximately fifty grocery stores throughout the northern and central New York State

regions under the trade name "Great American Food Stores."

First Plaza and the UST agree that Debtor's unsecured creditors generally fall into three categories: (1) trade creditors, (2) holders of subordinated bonds, and (3) First Plaza. The UST alleges that the trade debt is roughly $20,000,000, the subordinated bond debt amounts to approximately $60,000,000, and First Plaza's debt is approximately $20,000,000. First Plaza contends that although it is the second largest unsecured claimant in Debtor's case, surpassed only by the subordinated bond holders, a contractual subordination agreement entitles First Plaza to full payment prior to any distribution to the subordinated bond claims. As evidence of its unsecured claim, First Plaza supplied the Bankruptcy Court with certain Loan Agreements, dated August 14, 1992, and January 28, 1994, and certain 12.5% and 14.5% Senior Subordinated Notes due in 2002. Contemporaneous with its extension of loans to Debtor, First Plaza acquired warrants and shares of common and preferred stock in Victory Holdings Corp. ("VHC"). VHC is Victory Market's parent corporation and holds all of Victory Markets' equity security. Assuming conversion of First Plaza's preferred stock to common stock and the exercise of its warrants, First Plaza owns 37% of VHC's common stock. According to First Plaza, of VHC's remaining common stock, Centre Capital Investors, L.P. owns 47.43% and management owns 15.83%. VHC has not filed for relief under the Code.

On or about October 6, 1995, the UST appointed a nine-member Official Committee of Unsecured Creditors (the "Committee"). According to the UST, bondholders comprise 55.5% of the Committee members and non-bond creditors comprise 44.4% of the Committee members. For present purposes, the most significant fact about the UST's appointment of the Committee is that the UST did not appoint First Plaza to it. Nor has the UST, to date, formed any additional committees.

Immediately following the UST's appointment of the Committee, First Plaza brought an application pursuant to Fed.R.Bankr.P. § 9006(c)(1) to hasten an expedited hearing on its motion for an Order directing the UST to appoint it to the Committee. By Order dated October 6, 1995, the Bankruptcy Court granted First Plaza's application; four days later, it heard oral argument on the substantive motion. At oral argument, the Bankruptcy Court, pursuant to Code § 1109(b), afforded Debtor an opportunity to be heard in support of First Plaza, and Harter, Secrest & Emory, Esqs., co-counsel to the Committee, to be heard in support of the UST.

## B. The Bankruptcy Court's Memorandum–Decision and Order

After reviewing the relevant statutes and legislative history, Judge Gerling concluded that "the specific and important statutory constraints of Code § 1102 preclude [the Bankruptcy Court] from adding First Plaza to the Committee." (Bankruptcy Court Order at 6.) Accordingly, he denied First Plaza's request for an Order directing the UST to appoint it to the Committee. Judge Gerling focused his analysis on Congress' 1986 amendment of Code sections 1102(a)(1) and (2) and repeal of section 1102(c). Prior to the 1986 Amendments to the Bankruptcy Code, sections 1102(a) and (c) provided that:

(a)(1) As soon as practicable after the order for relief under this chapter, the court shall appoint a committee of creditors holding unsecured claims.

(2) On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The court shall appoint any such committee.

(c) On request of a party in interest and after notice and a hearing, the court may change the membership or the size of a committee appointed under subsection (a) of this section if the membership of such committee is not representative of the different kinds of claims or interests to be represented.

11 U.S.C. §§ 1102(a)(1–2), *amended by* 11 U.S.C. §§ 1102(a)(1–2) (1986); 11 U.S.C. § 1102(c), *repealed by* 11 U.S.C. § 302 (1986). The current version of §§ 1102(a) reads:

(a)(1) As soon as practicable after the order for relief under chapter 11 of this title, the United States Trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States Trustee deems appropriate.

(2) On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States Trustee shall appoint any such committee.

Judge Gerling reasoned that Congress' alterations of § 1102 reflect an intent to cancel the Bankruptcy Courts' "authority to add creditors to a committee appointed by the U.S. Trustee." (Order at 10.). If Appellant dislikes the composition of the Committee, he added, § 1102(a)(2) affords "the only substantive remedy": to request the Bankruptcy Court to order the UST to appoint additional committees. (*Id.*)

Judge Gerling also rejected the alternative bases Appellant proposed for Bankruptcy Courts to alter the composition of UST-appointed committees. The Bankruptcy Court cannot use its § 105(a) general equity powers to circumvent the clear language and meaning of § 1102, Judge Gerling concluded. (*Id.* at 10–11.) Nor does Fed.R.Bankr.P. 2020 provide a means for doing so, since it prescribes procedures for challenging the UST's actions without conferring any substantive rights. (*Id.* at 11.)

## II. Discussion

Before the Court can address the merits of Appellant's arguments on appeal, it must resolve two preliminary issues. Appellee argues first, that Appellant seeks to appeal the Bankruptcy Court's non-appealable interlocutory Order without having obtained the requisite leave of court, and second, that Appellant lacks standing to bring this appeal. The Court will consider these arguments in turn.

### A. Appealability

Title 28 U.S.C. § 158(a) grants the district courts "jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." Appellee argues that the Bankruptcy Court's Order is non-appealable because it only disposes of an incidental procedural issue, *In re American Cabinets & Woodcrafting Corp.,* 159 B.R. 969, 971 (M.D.Fla.1993), and is unrelated to an extension of time to file a plan under Code § 1121(d). Because the Bankruptcy Court's Order is interlocutory, Appellee continues, Appellant can only appeal it with leave of court, which Appellant never received.

 Appellant wins this opening volley. For bankruptcy appeals, courts in this Circuit apply a less rigid finality rule than they apply to appeals in other kinds of civil litigation. *See, e.g., In re Johns–Manville Corp.,* 824 F.2d 176, 179 (2d Cir.1987). More specifically, "a final order in a bankruptcy case is one that finally resolves a 'particular proceeding or controversy within the entire bankruptcy proceeding.'" *In re Gibson & Cushman Dredging Corp.,* 101 B.R. 405, 407 (E.D.N.Y.1989) (quoting *In re Chateaugay Corp.,* 80 B.R. 279, 282–83 (S.D.N.Y.1987)). Applying these standards, however, the Court concludes that the Bankruptcy Court's Order is interlocutory.

In *Johns–Manville,* the Bankruptcy Court for the Southern District of New York denied a motion for the appointment of an official committee to represent common shareholders of a Chapter 11 debtor. The District Court affirmed. When the shareholders appealed, the Second Circuit addressed the finality requirement for bankruptcy appeals and concluded that "a bankruptcy court's denial of a request to appoint an official committee for shareholders is [non-] final even under the more flexible standard of finality applied in bankruptcy cases." 824 F.2d at 179–80. The Second Circuit reasoned that orders denying such requests "simply affect the committee structure within which various disputes in the reorganization proceeding will be considered[;]" they "do not resolve particular disputes within the

overall bankruptcy case". *Id.* at 180. In addition, the court reasoned, although the order denying the shareholders' request for appointment of an official committee deprived them of the advantages of official committee status, it does not prevent them from participating in the bankruptcy proceeding. *Id.*

If the Southern District Bankruptcy Court's denial of the shareholders' motion for the appointment of an official committee to represent them in the bankruptcy proceeding was non-final, then Judge Gerling's denial of Appellant's motion for an order directing the UST to appoint First Plaza to the Committee is, so to speak, even more non-final. Rather than affect the number of committees who will consider disputes arising in the course of the bankruptcy proceeding, granting Appellant's motion would have altered only the composition of a single committee. Rather than leave First Plaza without a committee representing interests aligned with its own or deprive it finally of the advantages of official committee status, denying Appellant's motion leaves First Plaza free to seek an order, pursuant to § 1102(a)(2), directing the UST to appoint an additional committee. Whether or not First Plaza were to receive a committee appointment in that manner, the denial its motion for appointment to the Committee certainly did not prevent it from participating in the bankruptcy proceeding. In short, if *Johns–Manville* draws the line between final and non-final Bankruptcy Court orders, an issue on which this Court does not now express an opinion, Judge Gerling's Order falls resoundingly on the non-final side of that line.

This conclusion is itself somewhat non-final. Section 158(a) of Title 28 grants the Court jurisdiction to hear appeals of a bankruptcy judge's interlocutory orders, provided the Court grants leave to appeal such orders. *See In re CIS Corp.*, 188 B.R. 873, 878 (S.D.N.Y.1995) (declaring that statutory ambiguity has been resolved and appellant requires district court's leave to appeal interlocutory order, rather than bankruptcy court's). However, district courts grant interlocutory appeals from bankruptcy judges' orders only in "exceptional circumstances."

*Id.; In re Ionosphere Clubs, Inc.*, 179 B.R. 24, 28 (S.D.N.Y.1995); *Escondido Mission Village v. Best Prods. Co.*, 137 B.R. 114, 116 (S.D.N.Y.1992). To grant interlocutory appeals in non-exceptional circumstances would "contravene the well-established judicial policy of discouraging interlocutory appeals and avoiding the delay and disruption which results from such piecemeal litigation." *Ionosphere*, 179 B.R. at 28; *Escondido*, 137 B.R. at 116 (citations omitted). Although Appellant failed to file a motion for leave to appeal Judge Gerling's Order, the Court, pursuant to Bankruptcy Rules 8001(b) and 8003(c), will treat its notice of appeal as a motion for leave to appeal. *See, e.g., Ionosphere*, 179 B.R. at 28.

■ Title 28 U.S.C. § 1292(b) provides three factors for the Court to consider when determining whether to grant a party leave to appeal a bankruptcy judge's interlocutory order. *Ionosphere*, 179 B.R. at 28. Under this standard, the Court grants leave to appeal only if the order (1) involves a controlling question of law (2) over which there is a substantial ground for difference of opinion, and (3) an immediate appeal would materially advance the ultimate termination of the litigation. *Id.; Escondido*, 137 B.R. at 116. Appellee practically concedes, and the Court agrees, that the first two factors weigh in favor of granting Appellant leave to appeal. With respect to the third factor, Appellee contends that because Judge Gerling's Order leaves Appellant free to seek the appointment of an additional committee through which to assert and protect all of First Plaza's rights under the Code, Appellant cannot demonstrate that an interlocutory appeal would advance the termination of this litigation. *See Ionosphere*, 179 B.R. at 29.

■ Appellee's point is well-taken, but Appellant's counter-argument diminishes its force. As Appellant argues, if the UST-appointed Committee is legally invalid without First Plaza's membership, then postponing the resolution of the key legal issue presented to the Court until after the Committee negotiates a plan of reorganization could generate a substantial waste of the Committee's time and the debtor's assets. If an improperly-constituted Committee negoti-

ates a plan of reorganization and Appellant successfully challenges its composition at confirmation, "the entire plan will be in jeopardy and the period of formulation potentially wasted." *In re Johns–Manville Corp.,* 45 B.R. 833, 836 (S.D.N.Y.1984); *see also In re Neuman,* 1990 WL 67704, at * 1 (S.D.N.Y. May 15, 1990) (holding that granting leave to appeal two interlocutory orders authorizing trustee to retain special counsel and approving counsel's interim fee applications would materially advance ultimate termination of litigation and adding that "it would be counterproductive to permit the question to go unanswered only to find at a later stage of the proceedings that the [Bankruptcy Court's] appointment [of special counsel] was unauthorized as a matter of law."). Although the Court appreciates that Appellant may have other avenues available for protecting its own rights, this consideration weighs less heavily in the Court's consideration of the third factor that the risk that First Plaza's exclusion from the Committee may invalidate all of the Committee's work and prolong the reorganization process. Assuming *arguendo* that Appellant has standing to appeal, the Court grants Appellant's constructive motion for leave to appeal the Bankruptcy Court's interlocutory Order.

## B. Standing

The second preliminary issue is whether Appellant has standing to bring this appeal. Appellee argues that Appellant lacks standing, but leaves unclear whether it contests Appellant's standing to challenge the UST's appointment of the Committee, its standing to appeal the Bankruptcy Court's Order, or both. Appellee argues that Appellant lacks standing because it cannot articulate a "concrete and particularized injury" to First Plaza resulting from the UST's Committee appointments. Appellee's argument has three prongs. First, Appellee contends that whether the UST appoints First Plaza to a committee affects neither First Plaza's standing in the bankruptcy case nor its priority under the Bankruptcy Code. (Appellee Brief at 4.) Appellee next asserts that under the Code, neither First Plaza nor any other creditor has a right to membership on a creditors' committee; the Code merely guarantees

creditors that a committee will represent their interests as a class. (*Id.* at 5.) Third, although its exclusion from the Committee prevents First Plaza from using committee membership to further its own interests at the expense of other creditors' interests, Appellee claims that the use of committee membership for that purpose subjects a creditor to removal from the committee and perhaps to liability for breach of fiduciary duty. (*Id.*) Appellee thus concludes that the only injury flowing to First Plaza from non-membership is "conjectural and hypothetical," which is insufficient to confer standing.

Appellant responds somewhat obliquely to Appellee's standing argument. In its first cut at the standing issue, Appellant takes up Appellee's argument, which the Court has not addressed, that Appellant lacks standing under the Administrative Procedure Act (the "APA") to seek review of the UST's actions. (Appellant's Reply Brief at 14–16.) Then, and only in a footnote, Appellant offers responses to both readings of Appellee's more general standing argument. (*Id.* at 16–17 n. 8.) In the event that Appellee challenges Appellant's standing to appeal the Bankruptcy Court's Order, Appellant asserts that as a party in interest under § 1109(b) of the Code, it has "the right to be heard on any issue." (*Id.* at 17 n. 8.) In addition, Appellant claims that it has standing to challenge the UST's committee appointment decisions because "it and the other unsecured creditors in this case have been harmed by the [UST]'s failure to constitute a committee that adequately represents them." (*Id.*)

Whether or not Appellant has standing to challenge the UST's committee appointments, an issue on which this Court currently declines to render an opinion, Appellant lacks standing to appeal the Bankruptcy Court's Order. For the limited purpose of deciding the standing issue, the Court accepts as true the following uncontested assertions: (1) that Debtor's debt is comprised of Trade/Union debt in the amount of approximately $20 million, bond debt in the amount of approximately $60 million, and First Plaza debt in the amount of approximately $20 million (UST Mem. in Opp. at 19); (2) that First Plaza is Debtor's

largest single unsecured creditor (First Plaza Mtn. ¶ 27); (3) that pursuant to a subordination agreement, "First Plaza is entitled to payment in full of [its] claim before any distribution can be made on account of the Subordinated [bond] Claims" (*id.* at ¶ 9); and (4) that bondholders represent 55.5% of the Committee members and non-bond creditors represent 44.4% (UST Mem. in Opp. at 19). The Court also acknowledges that in the ordinary case, the Code exhorts the UST to appoint the seven largest creditors of a Chapter 11 debtor to serve on the creditors' committee. § 1102(b)(1).

■ As a general Second Circuit rule, "in order to have standing to appeal from a bankruptcy court ruling, an appellant must be a 'person aggrieved'—a person 'directly and adversely affected pecuniarily by' the challenged order of the bankruptcy court." *International Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir. 1991). In contrast to Article III's "injury in fact" test, the financial injury requirement makes it more difficult to secure appellate standing in bankruptcy cases than in other kinds of civil actions. *Kane v. Johns–Manville Corp.*, 843 F.2d 636 at 642 n. 2 (2d Cir.1988); *Royal Ins. Co. v. McCrory Corp.*, 176 B.R. 318, 320 (S.D.N.Y.1995). This rule is designed to streamline bankruptcy proceedings by denying appellate standing to the typically large number of parties whose interests are only indirectly affected by bankruptcy court orders. *See, e.g., Kane*, 843 F.2d at 642. Generally, "creditors have standing to appeal orders of the bankruptcy court disposing of property of the estate because such orders directly affect the creditors' ability to receive payment of their claims." *Id.* This rule is inapplicable, however, to creditors who challenge a bankruptcy court order—like Judge Gerling's Order in the case at hand—that does *not* dispose of assets in the debtor's estate. Granting that Appellant is a party in interest, its standing to appeal thus depends on whether the Order denying Appellant's motion to direct the UST to appoint First Plaza as a Committee mem-

ber directly and adversely affected First Plaza's pecuniary interests. For five main reasons, the Court finds that Judge Gerling's Order did not have an effect on Appellant sufficient to confer appellate standing.

### 1. § 1109(b)

■ Appellant claims that it has appellate standing pursuant to Code § 1109(b), which provides that "A party in interest, including ... a creditor ... may raise and appear and be heard on any issue in a case under this chapter." Contrary to Appellant's interpretation, § 1109(b) does not confer appellate standing. *See, e.g., In re American Ready Mix, Inc.*, 14 F.3d 1497, 1501 (10th Cir.1994), *cert. denied sub nom. Lopez v. Behles*, —— U.S. ——, 115 S.Ct. 77, 130 L.Ed.2d 31 (1994); *In re Salant Corp.*, 176 B.R. 131, 134 (S.D.N.Y.1994) ("merely being a party in interest is insufficient to confer appellate standing.... [T]he appellant must also have a pecuniary interest in the order being challenged."). If Appellant has standing to appeal, it derive from some other source.

### 2. Direct Effect on Pecuniary Interests

Nowhere in Appellant's original Motion, Appellate Brief, or Reply Brief does Appellant explicitly contend that the challenged Order directly and adversely affected its pecuniary interests. Instead, Appellant argues that the Committee does not adequately represent First Plaza's interests (First Plaza Mtn. ¶¶ 19, 27, 28,) or the interests of the unsecured creditors (Reply Brief at 15 n. 6, 16, 17 n. 8).[1] Appellant thus implies that when the Bankruptcy Court declared itself without legal authority to direct the UST to appoint First Plaza as a Committee member, it preserved the Committee's inadequate representation of First Plaza's interests. Then, Appellant attempts to link inadequate Committee representation with potential pecuniary loss: "The bondholders [whose representatives control the Committee] ... have no real stake in the estate unless and until the assets available for distribution to unsecured

---

1. For purposes of resolving the issue of Appellant's standing to appeal the Bankruptcy Court's Order, the Court is unconcerned with Appellant's claims that the Committee inadequately repre-

sents the interests of the "unsecured creditor pool." (Reply Brief at 15 n. 6.) At present, the Court is concerned solely with the effect of the Order on First Plaza's pecuniary interests.

creditors exceed First Plaza's $20 million claim. They are therefore more likely to accept greater risks in order to realize some value from the estate and do not adequately represent the unsecured creditor pool." (Reply Brief at 15 n. 6.) At best, this effect of the Bankruptcy Court's Order on First Plaza's pecuniary interests is unsubstantiated, speculative, and indirect.

### 3. Adverse Effect on Pecuniary Interests

The link between the composition of the Committee and harm to First Plaza's pecuniary interests appears even more tenuous in light of Appellant's failure to persuade the Court that the Committee inadequately represents First Plaza's interests. Courts in this Circuit have often emphasized that an unsecured creditors' committee has a fiduciary obligation to represent the interests of all unsecured creditors. *See, e.g., Matter of Bohack Corp.,* 607 F.2d 258, 262 n. 4 (2d Cir. 1979) ("the committee owes a fiduciary duty to the creditors, and must guide its actions so as to safeguard as much as possible the rights of minority as well as majority creditors.") (citing *Woods v. City Nat'l Bank & Trust Co.,* 312 U.S. 262, 268–69, 61 S.Ct. 493, 497–98, 85 L.Ed. 820 (1941)); *In re Caldor, Inc.,* 193 B.R. 165, 169–70 (Bankr.S.D.N.Y. 1996); *In re Ionosphere Clubs, Inc.,* 101 B.R. 844, 855 (Bankr.S.D.N.Y.1989); *In re McLean Indus., Inc.,* 70 B.R. 852, 862 (Bankr. S.D.N.Y.1987). The Committee's fiduciary duty to represent First Plaza's interests removes one plank from Appellant's assumption that the creditors appointed to the Committee will put their own interests ahead of First Plaza's.

The Committee members' economic self-interest removes the second plank. Although Appellant assumes that without First Plaza on the Committee, its members will accept greater risks in order to realize some value from the estate, in derogation of First Plaza's interests, the Court finds it equally if not more plausible that the Committee members will actively and fairly represent First Plaza's interests. Since none of the other creditors can perfect their claims until First Plaza recovers its $20 million, the Committee-members' pecuniary interests are rather closely aligned with First Plaza's. Thus, the Committee has a strong financial incentive to work diligently to ensure that First Plaza perfects its $20 million claim against the Debtor's estate. Absent evidence that the interests of the Committee members substantially conflict with First Plaza's interests, the Court is hesitant to declare that the Bankruptcy Court Order, which in effect secured First Plaza's exclusion from the Committee, directly and adversely affected First Plaza's pecuniary interests. *See, e.g., In re Hills Stores Co.,* 137 B.R. 4, 6 (Bankr. S.D.N.Y.1992) (noting that despite potential conflict among them, creditors on committee may provide adequate representation without court ordering appointment of separate committee, and offering as example of case where ordering appointment of separate committee would be justified, "a case where the creditors of separate debtors had vastly conflicting aims and entitlement and had shown themselves unable to function on a single committee") (citing *In re McLean Indus., Inc.,* 70 B.R. 852, 861 (Bankr.S.D.N.Y. 1987)).

### 4. The Value of Membership

The Court now turns to the fourth reason supporting its conclusion that First Plaza lacks standing to appeal the Bankruptcy Court Order. By failing to secure Committee membership, First Plaza failed to obtain statutory authority to work with the Committee members in performing tasks that the Code permits bankruptcy committees to perform, namely:

(1) consult with the trustee or debtor in possession concerning administration of the case;

(2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(3) participate in the formulation of a plan, advise those represented by [the Committee] of [the Committee's] determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan;

(4) request the appointment of a trustee or examiner under section 1104 of this title; and

(5) perform such other services as are in the interest of those represented.

11 U.S.C. § 1103(c). Appellant remains free to attempt to secure such powers for First Plaza by filing a motion with the Bankruptcy Court pursuant to Code § 1102(a)(2) for an Order directing the UST to appoint an additional committee of creditors. As an unsecured creditor, however, even if First Plaza remains excluded from a committee, it can protect its pecuniary interests in a variety of other ways. For instance, the Code provision that Appellant misinterpreted as conferring appellate standing, § 1109(b), affords First Plaza the right to "raise and ... appear and be heard on any issue in a case under [Chapter 11]." In addition, Code § 1121(c) affords creditors' committees and individual creditors identical rights to file a reorganization plan. Section 1128(b) gives all parties in interest the right to object to the bankruptcy court's confirmation of a plan. As a final example, § 503(b)(3) permits creditors to recover the actual and necessary expenses they incur by making a "substantial contribution" to the case. *See, e.g., In re Hills Stores,* 137 B.R. 4, 8 (Bankr.S.D.N.Y. 1992).

### 5. Distinguishing *Rensselaer*

Finally, the Court finds this case distinguishable from *International Trade Admin. v. Rensselaer Polytechnic Inst.,* 936 F.2d 744 (2d Cir.1991). In that case, three days before the deadline for doing so expired, a Chapter 7 trustee filed a motion with the Bankruptcy Court for the Northern District of New York for an extension of time in which to assume or reject a ground lease under the terms of Code § 365(d)(4). When the bankruptcy court denied the motion, the trustee did not appeal to the District Court, but Home & City Savings Bank (the "Bank"), which held a mortgage on the debtor's leasehold interest, did. The District Court affirmed; the Bank then filed an appeal with the Second Circuit. The appellee argued that the Bank lacked standing to appeal because it was not a party to the bankruptcy proceedings and because the trustee in bankruptcy, who had filed the original motion in the Bankruptcy Court, had not appealed.

Applying the Second Circuit rule "that in order to have standing to appeal from a bankruptcy court ruling, an appellant must be ... 'directly and adversely affected pecuniarily by' the challenged order of the bankruptcy court", 936 F.2d at 747, the court found that the Bank, which held a $2 million secured interest in the lease, had standing. The Second Circuit reasoned that if it affirmed the Bankruptcy Court's Order, the pecuniary effect on the Bank would be direct and adverse. Under § 365(d)(4), if the trustee in bankruptcy fails within 60 days after the date of the order for relief, or within any additional period of time that the bankruptcy court allows, to assume or reject an unexpired lease of nonresidential real property of which the debtor is the lessee, then the lease is deemed rejected and the trustee must immediately surrender the nonresidential real property to the lessor. At the time of the appeal, the 60–day time limit had expired. Therefore, if the Second Circuit had affirmed the Bankruptcy Court's Order, the debtor's leasehold interest—its security for $2 million of the Bank's loan—would have become worthless. "Without any doubt," the Second Circuit's affirmance of the Bankruptcy Court's Order would have had a direct and adverse pecuniary effect on the Bank. 936 F.2d at 747.

Appellant has failed to show that any similarly direct and adverse effect on its pecuniary interests would flow from this Court's affirmance of the Bankruptcy Court's Order. Assuming *arguendo* that committee membership carries with it an economic value of the kind that the Second Circuit's standing rule contemplates as a pecuniary interest, First Plaza retains the opportunity to attain that status by filing a motion with the Bankruptcy Court pursuant to Code § 1102(a)(2). Compare the Bank's position in *Rensselaer*—if the Second Circuit had affirmed the Bankruptcy Court Order, the Bank would have been unable to prevent the immediate loss of a two million dollar secured interest. The Court does not hold that the effect of a bankruptcy court order on an appellant's pecuniary interests must reach "*Rensselaeri-*

**18**

*an*" proportions in order to confer appellate standing, but rather distinguishes *Rensselaer* in order to indicate how distant Appellant lies from the realm of those upon whom the Second Circuit rule confers standing to appeal an order of the bankruptcy court.

### III. Conclusion

Although Judge Gerling resolved Appellant's earlier motion by issuing a non-final order, the order is appealable pursuant to 28 U.S.C. § 158(a). However, because Appellant failed to demonstrate that the Bankruptcy Court's denial of its motion for an order directing the UST to appoint First Plaza to the creditors' Committee had a direct and adverse impact on First Plaza's pecuniary interests, Appellant lacks standing to pursue this appeal. Because Appellant lacks standing, the Court is without subject matter jurisdiction to entertain the appeal and it is therefore DISMISSED.

SO ORDERED.